Bedell v. Oliver H. Bair Company, Inc., Appellant.

Argued October 13, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Horace Michener Schell,* and with him *William H.*

*Lathrop, Philip C. Pendleton* and *Montgomery and McCracken,* for appellant.—Money paid under a mistake of law cannot be recovered: Real Estate Saving Institution v. Lindner, 74 Pa. 371; Irvine v. Hanlin, 10 S. & R. 218; Ege v. Koontz, 3 Pa. 109.

*Abraham Friedman,* for appellee.—The statute of limitations is a defense on the facts and must be pleaded; and if it is not pleaded, it is deemed to have been waived: Hewit v. Democratic Publishing Company, 271 Pa. 546; Mason-Heflin v. Currie, 270 Pa. 221, 223; Barclay v. Barclay, 206 Pa. 132; Kirkendall v. Pritchard, 28 Dauphin Co. 132.

OPINION BY CUNNINGHAM, J., January 28, 1932:

The questions involved upon this appeal relate not only to the validity of a judgment entered for want of a sufficient affidavit of defense but also to the amount of damages assessable thereunder, if valid.

On April 30, 1902, plaintiff and defendant entered into an agreement in writing, called a "Benefit Bond," under the provisions of which defendant, in consideration of the payment by plaintiff of forty-six cents on the first day of May, August, November and February, each and every year during his lifetime, agreed "to care for and inter the remains" of plaintiff at a total cost of $75.

After plaintiff had made the specified payments for more than twenty-eight years, and in the aggregate amount of $51.74, he made demand, August 20, 1930, that defendant return them to him. Upon refusal of this demand plaintiff, on October 22, 1930, brought assumpsit to recover $51.74 "with interest thereon from the date of each respective payment." In his statement, plaintiff, after setting forth the issuing of the "Benefit Bond" and the making of the payments, averred the agreement amounted to a "contract of in-

surance'' and was ultra vires of defendant as it had been incorporated ''for the purpose of engaging in the undertaking business.'' In conclusion he averred counsel had advised him the agreement was ''unlawful and void'' and he was, therefore, entitled to the ''immediate return'' of all the moneys received by defendant thereunder. Defendant, in its affidavit of defense, admitted the issuing of the bond, the averment relative to the purpose for which it had been incorporated, the receipt from plaintiff of $51.74 and the demand for the return thereof, but denied the contract was void and denied liability for the return of the payments. No facts were put in issue by the affidavit and the case turned entirely upon questions of law. It was admitted in the affidavit that the court below had, in a previous case, ''construed a contract similar in form'' to the present to be a contract ''subject to the supervision of the Insurance Department of the State'' but defendant denied that this bond ''constitutes a contract of insurance.'' Further averments were to the effect that, pursuant to conferences with the attorney general's and the insurance departments, an arrangement had been made under which defendant would set up a ''proper reserve'' for the protection of holders of bonds similar to the one now in question and that defendant was ready to set up such reserve upon receipt of information from the insurance department as to the amount thereof and the manner in which it should be set up, and had, in the meantime, established an adequate reserve.

The contract contains, inter alia, the following provision:

''Should this benefit bond become void through the failure of payments hereinbefore mentioned, or from any other cause, then the payments made thereon shall be forfeited and become the sole and separate property of this company. This bond may, however, be rein-

stated, at any time within three months from the date of forfeiture on satisfactory proof that the person herein named is in good health; or, if said person should request this company, within three months of date of forfeiture, a credit receipt will be furnished for the full amount of money paid upon this bond, provided same has been fully paid for three years from date hereof.''

Referring, apparently, to this provision it was further averred that plaintiff had made no request for a ''credit receipt.'' Plaintiff obtained a rule for judgment for want of a sufficient affidavit of defense and defendant, thereupon, filed a supplemental affidavit averring as an additional defense that certain associations of funeral directors were ''officiously intermeddling'' in the case without having any interest therein and that they were ''maintaining and assisting the plaintiff with money and/or other pecuniary resources and in other ways to prosecute this action against the defendant company, and are unlawfully instituting this action in the name of the plaintiff,'' a former employe of defendant.

On January 16, 1931, President Judge Finletter of the court below filed an opinion holding in substance that the purported contract was ultra vires and, therefore, ''wholly void and of no effect'' and that plaintiff was entitled to recover the money he had parted with on the faith of the unlawful agreement. It was held further that even if a champertous contract had been entered into between plaintiff and the associations of funeral directors, defendant could not avail itself of that fact as a defense to the action because such a contract would not affect any obligation of defendant to the plaintiff. The rule for judgment was accordingly made absolute and damages were assessed, January 26th, for the principal of plaintiff's claim, $51.74,

with interest from the dates of the respective payments, amounting to $62, or a total of $113.74.

On January 30th defendant took a rule to strike off the assessment and for a re-assessment; the ground was that interest could legally be calculated only from the date of the rescission of the contract by plaintiff—August 20, 1930. On February 10th defendant obtained another rule, viz., one to open the judgment and permit it to file an amended supplemental affidavit of defense. The averments of its petition were that defendant had recently discovered plaintiff had made the payments provided for in the bond after the alleged rescission of August 20, 1930, namely, the quarterly payments due August and November, 1930, and February, 1931. Defendant did not plead the statute of limitations, either in its original or supplemental affidavit, but in its petition for this rule it set forth that it was advised by counsel "that the statute of limitations bars the plaintiff from the recovery of any sum or sums paid ...... more than six years prior to the alleged rescission ...... if in fact the plaintiff is entitled to recover at all." Plaintiff's answer to this second rule admitted the making of the quarterly payments, averred they were made because he desired to protect his rights under the bond in the event it should be decided the same was a valid contract, and denied the applicability of the statute of limitations to any of the payments.

The court, having both rules before it, filed an opinion on July 11th in which it reached the conclusion, inter alia, that the contract was entered into in good faith by both parties under the mistaken belief that the defendant was empowered to enter into it and that the payments were so made and received. The concluding paragraph of the opinion reads: "The assessment of damages should therefore be limited to the

sum of the mistaken payments, with interest only from the date of the writ in this case, there having been no previous demand.'' The rule to reassess damages was accordingly made absolute and on July 13th they were reassessed at $53.96, being the amount of plaintiff's claim, $51.74, plus interest from the date of suit, October 22, 1930, $2.22; the rule to open the judgment was discharged and we now have this appeal by the defendant from the judgment thus entered against it on the pleadings.

Two questions are involved under the pleadings. Is defendant, under the material facts averred in the statement and admitted in the original affidavit of defense, entitled to retain the payments it has received from plaintiff; if not, is it liable for interest on any of them? Assuming that defendant could prove the champertous contract pleaded in its supplemental affidavit, we agree with the court below that its existence would not be a defense against plaintiff's action. Although the court below considered the applicability of the statute of limitations and concluded that plaintiff's right of action was not thereby barred as to any of the payments, we shall not consider that question. The statute was not pleaded in either affidavit (Sec. 3, Act of May 14, 1915, P. L. 483, 12 P. S., Sec. 384) and it is sufficient to say that the learned president judge of the court below did not abuse the discretion vested in him by refusing to open the judgment entered on January 16, 1931, for the purpose of affording defendant an opportunity to plead the statute.

Turning, then, to the merits, we think it is too late for defendant to say that the bond here involved is not a ''contract of insurance.'' In a prior proceeding at No. 5013, December Term, 1928, of the court below, referred to in the opinion in this case and to which defendant was a party, a decree was entered under the Uniform Declaratory Judgments Act of June 18, 1923,

P. L. 840, adjudging, inter alia, that contracts of defendant, in the terms of this bond, "constitute contracts of insurance," that defendant "has no power under its charter to enter into contracts of insurance of any kind and that such contracts are ultra vires."

Contracts ultra vires of the corporation making them are not merely voidable "but wholly void and of no effect" and no performance by either party can give the unlawful contract any validity.

" . . . . . . The liability of a corporation for benefits received under a contract which is regarded as illegal and void must rest on quasi-contract, and not on the theory of contract, as is so often stated. This was the view taken by Mr. Justice GRAY in Central Transportation Company v. Pullman's Car Company, 139 U. S. 24, 59. 'The view,' said the learned justice, 'which this court has taken of the question presented by this branch of the case, and the only view which appears to us consistent with legal principles,' is as follows:

" 'A contract of a corporation, which is ultra vires, in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature, is not voidable only, but wholly void, and of no effect . . . . . . No performance on either side can give the unlawful contract any validity or be the foundation of any right of action upon it. . . . . . .

" 'A contract ultra vires being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it.

" 'In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms, but on an implied contract of the defendant to return, or failing to do that, to make compensation for property or money which it has no right to retain' '': Keener on Quasi-Contracts 272, Note 1.

Even if the defendant had pleaded the payments referred to in the petition to open and admittedly made subsequent to his demand for the return of the money parted with on the faith of the bond, such performance by plaintiff would have been immaterial.

It is not averred that plaintiff was a party to the negotiations with the departments of the state government set out in the affidavit and they may therefore be dismissed from consideration.

That the parties acted under a mutual and honest mistake is apparent from the following excerpt from the opinion of the court below: "The contract in question was entered into in good faith by both parties, under the mistaken belief that the defendant was empowered to enter into it. Although it does not appear in the pleadings, it was stated at bar, and we believe it to be the fact, that the Insurance Department of the state held that such contracts did not come within the definition of insurance. Relying upon this both parties to the suit entered into the contract referred to. It was but recently that frauds committed under such policies, by evil and unreliable persons, induced the state authorities to insist that all such companies should come under the supervision of the Insurance Department. The defendant, against whom no complaint was ever made, and who has conducted its business soundly and honestly, suffers from the application of the new general rule classifying all such contracts as insurance policies. The mistake, for, notwithstanding the original opinion of the state au-

thorities that such companies are not insurance companies, it was a mistake, was a mutual one."

In our opinion, the court below did not err in holding that the facts gave rise to a constructive (i. e., quasi) contract—a fiction of law "adopted for the purpose of enforcing legal duties by actions ex contractu, where no proper contract exists, express or implied," (Hertzog v. Hertzog, 29 Pa. 465,)— and that plaintiff was entitled to recover the aggregate of his payments. Such contracts are sometimes described as equitable liabilities upon which the law assumes to give a remedy.

Upon the question of interest we think the uniform rule in our state is that "where reclamation is ordered of moneys which have been paid under a mutual mistake of the parties, interest is due only from the date at which the demand for restitution is made": Grim's Estate, 147 Pa. 190; Commonwealth v. Newton Twp. 276 Pa. 172. In the case last cited, as here, "the money was accepted because of a mistaken belief......
There is nothing to show want of good faith and, under any fair construction, interest should not be allowed until demand."

The court below was in error in stating that there had been no demand previous to the time of bringing suit; the statement averred, and the affidavit admitted, a demand on August 20, 1930; plaintiff is entitled to interest from that date, instead of from October 22, 1930, as stated in the opinion making absolute the rule to reassess the damages. With this slight modification the judgment will, in our opinion, be supported by reason and authority.

Judgment modified and, as modified, affirmed.