Lukens, Admrx., Appellant, *v.* The Oliver H. Bair Company.

Argued October 13, 1931.

Before
TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Abraham Friedman,* for appellant.

*Horace Michener Schell,* and with him *William H. Lathrop* and *Philip C. Pendleton,* and *Montgomery and McCracken,* for appellee.

Opinion by Cunningham, J., January 28, 1932:

This appeal is by the plaintiff from an order of the court below discharging her rule for judgment for want of a sufficient affidavit of defense; the pleadings consist of her statement of claim and the defendant's original and supplemental affidavits of defense. The material facts pleaded by each party are either expressly admitted, or not specifically denied, by the other. Defendant, incorporated under the laws of this state "for the purpose of engaging in the undertaking business," has no power under its charter to enter into contracts of insurance, nor has it complied with our laws regulating the making of such contracts.

On May 22, 1905, it issued to Letitia A. Lukens, of whose estate plaintiff is the administratrix, an agreement in writing, designated a "Benefit Bond," under the provisions of which defendant, in consideration of the payment by plaintiff's intestate of "twenty cents ...... on Monday of each week during [her] lifetime," agreed "to care for and inter" her remains in the manner therein specified and at a total cost of $100. Letitia A. Lukens made the required payments from the date of the agreement until May 15, 1916.

The bond contained, inter alia, the following provision: "This Benefit Bond shall become void on failure to make any of the said payments when due and all payments theretofore made thereon shall be forfeited to this company and become the sole, separate and absolute property thereof. After payments have been made for three or more full years, this company will, upon request within three months after the date of forfeiture, furnish the said person with a credit receipt for one half of the money paid upon this Benefit Bond, which will be received by this company as part payment to the extent of the face value thereof, for and on account of any funeral furnished

and conducted by this company for the person named herein or husband or minor children."

Up to this point this case is comparable to that of Alva W. Bedell v. Oliver H. Bair Company, Inc., 104 Pa. Superior Ct. 146, which involved the consideration of a contract issued by this defendant to Bedell in terms similar to those of the agreement now in question. For the reasons set forth at length in the opinion in that case we affirmed a judgment, on the pleadings, in favor of the plaintiff therein for the aggregate of the payments made by him, with interest from the date of his demand for their return. It was there held that the bond sued on in that case was an ultra vires contract of insurance and therefore illegal. The result of such conclusion was that a constructive (i. e., quasi) contract arose, as a matter of law, out of the facts and that Bedell was entitled to enforce the equitable liability of defendant to return, or make compensation for, the money with which he had parted on the faith of the unlawful contract.

Here we have the same insurance feature that was present in the Bedell case; in each bond the payments were to be made during the lifetime of the person to whom it was issued and the chances for gain or loss to the respective parties depended upon an uncertain event—the death of the obligee.

If plaintiff's intestate, when she ceased making payments on May 15, 1916, had demanded the return of those theretofore made, she would have been entitled, in the event of defendant's refusal, to recover their aggregate amount, with interest from the date of demand. This she did not do and from this point forward the case now at bar differs radically from the Bedell case.

It is specifically averred by defendant "that on or about May 15, 1916, at the special instance and request of Letitia A. Lukens, the contract, a copy of which is

attached to plaintiff's statement of claim and marked 'Exhibit A' [the bond to which we have been referring], was cancelled and in lieu thereof the defendant company issued to the said Letitia A. Lukens its fully paid funeral contract, a true and correct copy thereof being attached to and made part of plaintiff's statement of claim and marked 'Exhibit B.' "

This last mentioned agreement was issued by defendant under the above quoted paragraph of the original bond as the "credit receipt" therein provided for. It was an agreement by which defendant obligated itself to care for and inter the remains of Letitia A. Lukens and allow a credit to the extent of $85 "for and on account of any funeral furnished and conducted" by it for her.

The present suit is based upon this agreement and was brought to recover the sum of $85, with interest from May 15, 1916. It is averred in the statement that Letitia A. Lukens died May 20, 1930, but there is no averment therein that defendant was notified of her death and refused to carry out its promises under the "credit receipt." On the other hand it is specifically averred in the affidavit that defendant was not advised of her death until approximately three weeks thereafter.

The theory upon which plaintiff now seeks recovery is that the second contract is merely a paid up policy of insurance and just as illegal as the original bond. The defendant company's contention is that even if the original bond was an unlawful contract the "credit receipt" is not an insurance contract but an agreement, for a consideration already in hand, to render specified services to the estate of the other party to the contract; that such a contract is within the charter powers of defendant and therefore not open to the charge of being ultra vires. In other words, the contention of counsel for defendant is that the "credit re-

ceipt'' is essentially a contract for the rendition of funeral services and the furnishing of equipment, to a value agreed upon and paid for, upon the happening of an event which will certainly occur. As expressed in their brief, their position is ''that where an illegal contract is cancelled and a new contract, founded upon a new consideration, is entered into between the parties, the new contract [may be] valid even though it be remotely connected with the old contract.''

Was there a new and independent consideration for the contract sued upon? The situation was this: On the date the new agreement was made Letitia A. Lukens had a choice of remedies: she could either rescind the original illegal agreement and recover the aggregate of her payments thereunder, or surrender it for cancellation and make a new agreement relative to the same subject matter—the interment of her remains. She elected the latter alternative and made a new agreement with defendant to the effect that upon her death it would furnish the equipment and perform the services incident to her interment and allow a credit of $85 upon the cost thereof; the consideration to it for this engagement upon its part was that it should retain the payments she had theretofore made. The money retained legally belonged to her and she voluntarily permitted it to remain in defendant's hands: Repplier v. Jacobs, 149 Pa. 167.

We see nothing illegal in this contract; its terms were definite and fixed; there was no chance for gain or loss to either party depending upon the time of her death; defendant would receive no additional payments through the prolongation of her life nor lose any through its early termination. We think there was an independent consideration for the second contract and that it was not a contract of insurance but one within the corporate powers of defendant.

Upon consideration of all the facts we are of opinion

that the contract here sued upon comes within the principle of law announced by Chief Justice MARSHALL in Armstrong v. Toler, 11 Wheaton 258, to the effect that although no action can be maintained on a contract, "the consideration of which is either wicked in itself or prohibited by law," yet when a contract is only remotely connected with an unlawful transaction and rests upon a new and independent consideration the new contract may be enforced. An agreement will be enforced even if it is incidentally or indirectly connected with an illegal transaction, provided it is supported by an independent consideration: Sauer v. McKees Rocks School District, 243 Pa. 294, 304.

A matter for consideration therefore is whether the new contract is so intimately connected with the unlawful agreement as to be tainted with its illegality. As was pointed out in the Bedell case, there was nothing fraudulent or immoral about the first contract. When it was made defendant was under the honest impression that it had a right to enter into it and plaintiff's intestate was of the same belief. It turned out subsequently that the parties had acted under a mutual mistake. The technical violation of law of which defendant was guilty was the making of a contract of insurance without corporate power and without complying with the statutes regulating the insurance business. The following observations by Mr. Justice HOLMES, when a member of the Supreme Court of Massachusetts, in Graves v. Johnson, 179 Mass. 53, 60 N. E. 383, are applicable: "In fixing the degree of proximity to the illegal transaction necessary to taint a new contract, the moral turpitude involved in the original transaction will be given some weight by the court. As the only moral turpitude here is that which is implied from failure to comply with a penal statute, there is no justification for an extension of

the effect of the illegality to a collateral undertaking resting upon a new consideration.''

Having concluded that the contract sued upon was valid, the only question remaining is whether the fact that defendant did not furnish any equipment or render any services in connection with the interment of plaintiff's intestate amounted to such a breach thereof as now entitles her estate to recover damages. As noted, there is no averment in the statement that defendant refused performance and the undenied averment of the affidavit is that defendant was not advised of the death of Letitia A. Lukens until approximately three weeks after the occurrence of that event. Defendant, having been afforded no opportunity to comply with the terms of its contract, cannot now be charged with its breach, and, indeed, plaintiff did not sue for damages alleged to have been suffered through a breach of the agreement but upon the theory that the estate of which she is the administratrix is entitled to recover the consideration for the contract because it was a contract of insurance and therefore wholly void.

The conclusions we have reached render it unnecessary for us to consider the other defenses set up in the affidavits. The single assignment alleges error in discharging plaintiff's rule for judgment; in our opinion the court below, under the uncontroverted facts appearing from the pleadings, was fully justified in making the order complained of and the assignment is therefore overruled.

The appeal is dismissed and the order affirmed.