Ruto *v.* Italian Burial Casket Co., Appellant.

Argued October 13, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Francis Shunk Brown,* and with him *Carlos Berguido, Jr.,* and *Ira Jewell Williams,* for appellant.

*Abraham Friedman,* for appellee.

OPINION BY CUNNINGHAM, J., January 28, 1932:

In his capacity as administrator of the estate of Maria Antonia Ruto, plaintiff brought assumpsit against the defendant corporation to recover two items aggregating $211.20; the court below held the affidavit of defense insufficient as to one of them, $79.20, and entered a judgment, on the pleadings, in favor of the plaintiff for that amount; the present appeal by the defendant followed.

This litigation had its origin in certain contracts between defendant and Maria Antonia Ruto, and Carmine Ruto, her husband, relative to furnishing "funeral and burial equipment."

In the cases of Alva W. Bedell v. Oliver H. Bair Company, Inc., 104 Pa. Superior Ct. 146 and Jennie M. Lukens, Admx. v. The Oliver H. Bair Company, Inc., 104 Pa. Superior Ct. 280 we had occasion to consider the rights and liabilities of the parties under contracts containing provisions similar to, but not identical with, the contracts here involved and it will, therefore, be unnecessary for us to repeat in detail our reasons for some of the conclusions we have reached in the case now at bar.

We held that the "Benefit Bond" involved in the Bedell case was unlawful and void because it was an ultra vires contract of insurance issued in violation of our insurance laws. Bedell rescinded the agreement and demanded the return of the payments made thereunder; we affirmed, for the reasons stated in the opinion in that case, a judgment in his favor, upon the pleadings, for the amount of the payments, with interest from the date of demand.

In the Lukens case there were two contracts—the original bond and a "credit receipt" issued to and accepted by the obligee (in accordance with a pro-

vision of the bond) when the payments were discontinued. The obligee's administratrix sued for the amount of the "credit receipt," contending that both the bond and the "credit receipt" were ultra vires contracts of insurance; the court below held the affidavit of defense sufficient and discharged plaintiff's rule for judgment. We affirmed, holding that the original bond was an ultra vires contract of insurance but that the second contract was within the charter powers of the Bair Company, was based upon a new and independent consideration, and was not so closely connected with the first contract as to be tainted with its illegality.

No material facts were in dispute under the pleadings in either of those cases, but that is not the situation here.

An examination of this record convinces us that a summary judgment should not have been entered for any part of plaintiff's claim. The pleadings consist of an amended statement of claim (to which defendant filed an affidavit of defense raising questions of law that were decided against it and leave granted to file an affidavit on the merits) and an original and supplemental affidavit of defense.

Undisputed facts are that on April 6, 1926, defendant issued to Maria Antonia Ruto a "Contract for Funeral and Burial Equipment," No. 6792, by which it agreed, in consideration of the payment by her of sixty cents "on Monday of each week, until the sum of Two Hundred ($200) Dollars is paid," to care for and inter her remains and furnish the funeral equipment specified. On the same day it issued to her husband, Carmine Ruto, a similar contract, No. 6791, under which he agreed to pay $1 each week until the like sum of $200 should be paid. Payments were made by the intestate and her husband in accordance with the provisions of their respective contracts up to

October 8, 1928, the aggregate of her payments being $79.20 and of his $132, or a total of $211.20, the amount for which suit was brought.

Defendant is a New Jersey corporation, incorporated October 1, 1921, "for the purpose of supplying burial caskets and necessary articles and equipment for funerals" and has power "to contract with and for any and all persons and organizations for the purpose of supplying burial caskets and all necessary articles and equipment and vehicles for funerals, either on the club installment plan, or premium or guaranty plan, or by direct and individual contract." Immediately following its incorporation it registered in this state for all the purposes set forth in its charter. It is not clear, therefore, that the contracts here involved were ultra vires, but if they were contracts of insurance they were unlawful because defendant admits in its affidavit that in conducting its business it did not comply with the insurance laws of this state. Its explanation is that prior to its incorporation "it had been advised by the then Insurance Commissioner, upon advice received by him from the office of the Attorney General of Pennsylvania, that the issuance of said certificates or contracts similar to Exhibit 'A' [issued to the intestate] did not constitute the doing of the business of insurance in the State of Pennsylvania." We think this advice, if given, was mistaken.

The contracts issued by this defendant to the intestate and her husband provide that they "shall be in full and immediate effect" from date and "in the event of the death" of the obligee "all payments provided for shall absolutely cease and determine." Here is the distinguishing characteristic of a contract of insurance—the chance of gain to the estate of the obligee and loss to the obligor if the obligee should die before the payments aggregate $200.

In Attorney General ex rel. v. C. E. Osgood Company, 144 Northeastern Reporter 371, the contracts related to the sale of furniture upon the installment plan. Under their terms the title was retained by the seller but the property delivered to the customer under a lease providing that title should vest in him upon completion of the payments. The lease contained a provision that in case of the death of the customer before the whole amount had been paid a receipt in full for the balance due on the account (provided it did not exceed $500) would be furnished. It was held that these were insurance contracts. Other cases along this line are referred to in Arlington Cemetery Company v. Baldridge, 19 Del. County Rpts. 625.

We think the contracts now in suit were contracts of insurance and were unlawfully issued. If Maria and Carmine Ruto, when they discontinued their payments on October 8, 1928, had demanded the return thereof, they would have been entitled to enforce their demands: Bedell v. Oliver H. Bair Co., supra. Neither of them did this, and it is at this point a dispute relative to material facts arises in the pleadings.

In the sixth paragraph of the statement it is averred that "on or about the 8th day of October, 1928, it was verbally agreed by and between the intestate and her husband, Carmine Ruto, and the defendant's duly authorized agent, P. Colucci, who had authority to act for and on behalf of the defendant, that the moneys paid by both the intestate and her husband, on account of both certificates issued to them by the defendant, amounting to $211.20, as aforesaid, be applied and used in full payment of the $200.00 to be paid by the intestate to the defendant under the terms of" the contract issued to her April 6, 1926.

These averments are flatly denied by defendant in its affidavit and it is there stated that at the time contract No. 6791 was issued to the intestate's hus-

band it was orally agreed "that, in consideration of the physical impairment of Carmine Ruto, and the mutual promises of the parties, in the event of the death of the said Carmine Ruto before he had paid to defendant the sum of two hundred dollars, as per the terms of the said contract, No. 6791, the intestate agreed to pay to defendant the difference in cash between the amount paid in up to that time and the said sum of two hundred dollars, for a complete funeral as per said funeral and burial contract, No. 6791." A further averment is that this oral agreement was embodied in a printed form prepared by defendant and the intestate's signature affixed thereto at her request, a copy of this special contract being attached as an exhibit to the affidavit.

Moreover, it is averred in the fourteenth paragraph of the affidavit that, when neither the intestate nor her husband made the payments due October 15, 1928, the defendant "in accordance with its rules, which were by the terms of said contracts made part thereof," issued to the intestate and to her husband "credit certificates, respectively, for $79.20 and $132, to apply in the event of their deaths, towards the cost of their respective funerals," which certificates were delivered to and accepted and retained by the intestate and her husband. The intestate died June 30, 1930, and defendant avers that it was then ready and willing to inter her remains and give a credit to her estate of $79.20 on account of funeral expenses, "in accordance with credit certificate issued to her." If defendant can prove these averments upon a trial it will have a defense to the whole of plaintiff's claim: Lukens Admx. v. The Oliver H. Bair Co., Inc., supra. In the absence of any averment that the intestate, or her husband, demanded a return of the money paid upon their respective certificates up to October 8, 1928, and in the absence of an averment that defendant re-

fused to inter intestate's remains after notice of her death, the case will necessarily turn upon the question whether ''credit certificates'' were issued and accepted in lieu of the original agreements, as averred by defendant, or whether plaintiff has given the true version of the arrangement then made in his statement of claim. As these questions of fact are in controversy under the pleadings, judgment should not have been entered for any part of the claim.

It is not necessary to refer at this time to the other defenses interposed.

The second and seventh assignments are sustained; the judgment is reversed and the record remitted with a procedendo.