## Rogers, Admrx., Appellant, *v.* Penn Mutual Life Insurance Company of Philadelphia.

64

Argued October 29, 1941.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, RHODES and HIRT, JJ.

*Arthur S. Arnold,* with him *Samuel Levitsky,* for appellant.

*C. Clothier Jones, Jr.,* with him *Robert Dechert,* of *Dechert, Smith & Clark,* for appellee.

OPINION BY CUNNINGHAM, J., April 29, 1942:

Plaintiff, appellant herein and suing as administratrix of the estate of Mary L. Beauchmein, deceased, brought an action in assumpsit in the Municipal Court of Philadelphia County to recover the sum of $603.20, representing the aggregate premiums paid by her decedent to The Penn Mutual Life Insurance Company of Philadelphia on an annuity policy, issued by it. The company filed an affidavit of defense raising questions of law. The court below, in an opinion by PIEKARSKI, J., held that plaintiff's statement was insufficient in law and accordingly entered judgment for the defend-

ant insurance company; this appeal by the plaintiff followed.

Appellant's statement of claim averred that on January 13, 1936, the company issued a "Ten Year Deferred Annuity Policy" to the decedent, then sixty-five years of age. A copy of the policy was attached as an exhibit. Under it the company agreed, in consideration of quarterly premium payments, in the amount of $37.70 each, for a term of ten years, to pay the annuitant, if living on January 13, 1946, $20 each month during her life. Up to the date of her death on February 19, 1940, the annuitant had paid premiums, including the one due on January 13th of that year, in the total amount of $603.20.

Appellant further averred (6th and 7th paragraphs of statement) that the policy was not drawn on a form approved by the Insurance Commissioner of the Commonwealth of Pennsylvania, although "the Act of Assembly of the Commonwealth of Pennsylvania approved the 17th day of July, 1935, P. L. 1116, [40 PS §510(a)] provides, inter alia, that on and after January 1, 1936, no annuity or pure endowment contract shall be issued or delivered in this Commonwealth by any stock or mutual life insurance company, except policies of industrial insurance where the premiums are payable monthly or oftener, unless and until a copy of the form thereof has been filed with the Insurance Commissioner and formally approved by him, as more fully and at large appears by reference to the said act."

Appellant's basic theory is that in the absence of such approval the policy was wholly void, and the company is therefore obligated to make restitution of the premiums received by it, with interest.

The company, in its affidavit of defense in lieu of a demurrer, set forth that the legislative enactment invoked by appellant also contains a further provision to the effect that "failure to obtain the approval of the

Insurance Commissioner does not affect the validity of such contracts and that any provisions thereof in conflict with the required provisions of the act are to be construed in accordance with the required provisions of the act and not with the provision of the contract."

Its contention upon the question of law involved upon this appeal is that the provision upon which it relies expressly validated the contract now in suit. The court below agreed with the interpretation placed upon the validation clause by the company, and rejected appellant's argument that it was not intended to apply to contracts drawn on forms not approved by the Insurance Commissioner, but only to contracts on forms approved by him, but lacking one or more of the mandatory provisions prescribed by the statute.

It thus appears that the single issue here involved concerns the proper interpretation to be placed upon the validation clause of the Act of 1935, supra. The statement of claim contains no averment of fraud, misrepresentation or mistake; the sole ground upon which recovery is sought is lack of formal approval of the *form* of the policy. It is true that appellant's counsel, in his presentation of this case on appeal, has intimated that the annuity policy was a harsh bargain from the standpoint of the annuitant. He stresses the fact that she could receive no benefits until she reached her seventy-sixth year, by which time the premiums paid to defendant would have aggregated about $1508. These suggestions of overreaching are beyond the scope of appellant's pleading, and are not involved in the disposition of this appeal. Consequently, we are not passing upon the question whether the policy is a pure wagering contract, at least for ten years, and therefore invalid because against public policy.

As indicated, the only issue under the present pleadings is whether the policy was wholly void by virtue of the failure of the company to have the form on which

it was issued approved by the Insurance Commissioner, and the answer depends upon a proper interpretation of the applicable provisions 'of the Act of 1935, supra.

Prior to its passage, there was no statutory enactment in Pennsylvania requiring forms of *annuity* policies to be filed with and approved by the Insurance Commissioner. Section 409 of the Act of May 17, 1921, P. L. 682, 40 PS §509, entitled, "The Insurance Company Law of 1921," required that policy forms of life and endowment insurance be filed with and approved by the Insurance Commissioner. Section 410 of the same act, 40 PS §510, provided that certain mandatory provisions be inserted in such policies. None of these provisions applied to annuity policies. The purpose of the Act of 1935 was to fill this gap. It adds a new section to the Act of 1921, to be known as Section 410B, 40 PS §510(a), drafted as *one entire section,* subdivided into a number of paragraphs. The opening one, upon which appellant places reliance, reads:

"On and after January 1, 1936, no annuity ....... contract shall be issued or delivered in this Commonwealth by any stock or mutual life insurance company, ...... unless and until a copy of the form thereof has been filed with the Insurance Commissioner and formally approved by him."

Following this paragraph there is an enumeration of seven provisions, required to be incorporated in annuity and pure endowment policies. These, in turn, are followed by the provision upon which the defense is based. It reads:

"*Any such contract* or any application, endorsement or rider form used in connection therewith, *issued in violation of this section shall, nevertheless, be held valid,* but shall be construed as provided in this section, when any provision in such contract, application, endorsement, or rider is in conflict with any provision of this section or with any other statutory provision, the rights,

duties, and obligations of the company, of the holder of the contract, and of the beneficiary or annuit[ant?] thereunder shall be governed by the provisions of this section." (Italics supplied.)

The language of this validation clause is clear and precise in meaning. It declares in unambiguous terms that policies shall not be rendered invalid by reason of the fact that they have been issued in violation of Section 410B, one of the requirements of which is that a copy of the policy form must be filed with the Insurance Commissioner and formally approved by him. As above stated, the material averment of the statement is that the company failed to comply with this requirement. It seems to us, however, that the validation clause is designed to cover just such a contingency by placing a stamp of validity upon the policy, notwithstanding the statutory non-compliance. At the same time, it accords adequate protection to the insured, whose rights and obligations under the policy are to be construed as though the standard provisions, made mandatory by the statute, had been incorporated therein. This protective feature eliminates any prejudice which might otherwise be suffered by the insured; it confers upon him precisely the same contractual rights which would have inured to him had the policy form been filed with and approved by the Insurance Commissioner.

Appellant's contention that the validation provision was not intended to render valid a policy the form of which has not been approved by the Insurance Commissioner, is, we think, untenable. Her counsel argues that a distinction must be drawn between a policy on a form approved by the Commissioner, but failing to contain all the mandatory provisions, and one not so approved. We feel we would not be warranted in inferring a legislative intent to make such a distinction, in the face of the legislature's obvious intention to give

the validation clause an all-inclusive scope. To do so, would be in violation of the recognized rules of statutory construction, which need not be here discussed.

The interpretation which we have placed upon Section 410B is not without a precedent. Precisely the same question was passed upon in *Herman v. Mutual Life Insurance Co.*, 108 F. (2d) 678, 127 A.L.R. 1458 (C.C.A., Third 1939). In that case, one of the questions raised and passed upon was whether an annuity policy is void by reason of the failure of the insurer to have the policy form approved by the Insurance Commissioner in accordance with Section 410B. In deciding that the policy was nevertheless valid, the court said (p. 682):

"In Pennsylvania, as in many other jurisdictions, the form and substance of insurance policies are subject to regulation. See, Patterson, Administrative Control of Insurance Policy Forms, 25 Columbia Law Review 253; Isaacs, The Standardizing of Contracts, 27 Yale Law Journal 34. No annuity policy may be issued without the formal approval of the Insurance Commissioner, and as so issued must contain in substance certain enumerated provisions. Nevertheless, policies lacking such approval are valid, though any clause in conflict with the required statutory provisions is ineffectual. Act July 17, 1935, P. L. 1116, §410b, 40 PS Pa. §510a. Issuance without approval is made 'unlawful' (a misdemeanor) and a further penalty discretionary with the Commissioner is provided. Act May 28, 1937, P. L. 934, 40 PS Pa. §477b. The allegation here is that the new policy is wanting in formal approval, nothing more. It is not suggested that the issued policy offends against the substantive prescription of the statute. By the same token there is nothing to show that the Commissioner's blessing would not have been conferred as of course or even that it could have been legally withheld. Cf. 40 PS Pa. §509.

"No stretch of our legal imagination can torture this circumstance into a nullification of the new policy. There is no trouble about explicit statutory voidness. Nor can the expressed validity of the contract work against public policy. The validating provision itself, invalidates all objectionable clauses regardless of approval. That, we are sure, is sufficient to punish the law breaking mens rea (but not inadvertence) as manifested in a civil court action."

It is interesting to note, as pointed out in the opinion in the Herman case, that the New York Court of Appeals has construed a somewhat similar statutory provision in that State in the same manner. In commenting on the New York decision, the Circuit Court stated (p. 682) :

"The New York Court of Appeals, construing a cognate statutory scheme, as applied to a far harsher circumstance, has flatly rejected the notion that an unapproved policy bears the stigma of illegality. *Hopkins v. Connecticut General Life Ins. Co.,* 225 N. Y. 76, 121 N. E. 465, see also 32 C. J. 1108. It is interesting to observe that the Pennsylvania statutes we are proceeding under appear to be derived from those of New York. See 27 McKinney's Consolidated Laws of New York, c. 28, Insurance Law, §§53, 101, 101½ et seq."

Appellant attempts to distinguish the Herman case on the ground that the present policy, unlike the policy there involved, was issued at a time when the legislature had not imposed a penalty for failure to secure approval of the Insurance Commissioner, as required by Section 410B. The Act of June 23, 1931, P. L. 904, 40 PS §477b, which added Section 354 to the Insurance Law, made the failure to obtain the formal approval of the Insurance Commissioner to forms of policies, covering life, health, accident, personal liability and casualty insurance, a misdemeanor subject to a penalty. It did not apply to annuity policies. However, subsequent to

the issuance of the policy in the case at bar, it was amended by the Act of May 28, 1937, P. L. 934, 40 PS §477b, and made applicable to fire, marine and title insurance policies and contracts pertaining to pure endowments or annuities. Appellant urges that the legislature cannot have intended the validation clause to cover annuity policies issued on unapproved forms at a time when failure to comply with the statute did not subject the insurer to a penalty. This contention is based upon the theory that, in the absence of a penalty, no element of restraint, commanding obedience, then existed, unless the validation clause be so restricted by implication as to exclude from its operation all policies issued on unapproved forms. This argument lacks force. The plain meaning of the validation clause cannot be varied by reason of the presence or absence of a penalty provision. Moreover, if the penalty provision has any materiality, its absence supports rather than weakens the inference that the validation clause was intended to have unrestricted application.

Appellant has cited the following cases as substantiating her contention that the annuity policy was void: *Bedell v. Oliver H. Bair Co.,* 104 Pa. Superior Ct. 146, 158 A. 651; *Lukens v. Oliver H. Bair Co.,* 104 Pa. Superior Ct. 280, 158 A. 654; *Ruto v. Italian Burial Casket Co.,* 104 Pa. Superior Ct. 288, 158 A. 657. These cases are clearly irrelevant. They involved the issuance of contracts of insurance by a company in excess of the scope of its charter powers.

Judgment affirmed.