## Downing v. School District of Erie et al.

Gerald A. McNelis, for plaintiff.

William W. Knox and English, Quinn, Leemhuis & Tayntor, for defendants.

WADE, P. J., thirty-seventh judicial district, specially presiding, November 18, 1943.—This action in equity was brought by F. B. Downing, a taxpayer of the School District of the City of Erie, against the said school district, seeking an injunction to restrain it "from accepting policies [of insurance] from certain companies containing forms of extended coverage of insurance under endorsement no. 3, when, as a matter of fact, certain companies do not have the power to write all forms of extended coverage, with particular reference to damage from falling aircraft or objects therefrom".

Petitioner contends that, inasmuch as there are items of extended coverage written by insurance companies beyond the power of their charters, such items are void, and the School District of Erie should be restrained from accepting and retaining void insurance. Defendant school district and defendant insurance companies contend that, although these items may be ultra vires of their corporate charters, since the policies are executed, a suit by the school district against one of the companies, in the event of loss, could not be successfully defended by one of the companies and, therefore, the school district is fully protected in any event.

## Findings of fact

1. The various companies involved in this litigation and the number and types of items written beyond the

power of the charters of these companies are so involved and numerous that it would be impractical as well as unnecessary to set out in these findings the various names of the companies and the various items written beyond the power of their charters.

2. The companies, defendants in this case, have written various items as embraced in the forms of extended coverage of insurance under standard endorsement no. 3, and these companies do not have the power to write all forms of extended coverage. Therefore, this court finds as a fact that defendant companies have contracted insurance with the School District of Erie and have included therein certain items of extended coverage which are ultra vires of the corporate charters.

3. The policy of insurance of the United Mutual Fire Insurance Company is a nonassessable policy in that the said policy does not contain an assessment clause. The bylaws of this company provide (article XIII, sec. 1) :

"Assessable and Non-assessable Policies. The company shall issue either assessable policies or non-assessable policies or both types of policies as the board may determine. No member shall be assessed under a policy which does not by its terms provide for liability to assessment."

## Discussion

Before the general problem is inquired into, there are several collateral questions that must be first considered.

Counsel for the school district takes the position:

"Inasmuch as this is a taxpayer's bill, the burden was upon the taxpayer to show substantial damage by showing that the school district's money had been paid for void policies"; quoting Wolff Chemical Co. v. Philadelphia, 217 Pa. 215, 218 (1907) :

"In such case, he [a taxpayer seeking an injunction] is accorded a standing in equity because of the reason

that he is a taxpayer and that if municipal funds are misappropriated he will be injured pecuniarily, and not upon the ground that he is simply a citizen or an inhabitant or an elector. The invasion of his pecuniary interests is the special injury that gives him a standing to maintain a bill."

This statement of the law is obviously correct; however, the taxpayer does not have to show "substantial" damage, for any "diversion" of the money from legal purposes would be enjoined. See Wilds et al. v. McKeesport City School District, 336 Pa. 275, 278 (1939).

This citation further holds that there must be more than an injury to the citizens as a whole before equity will take jurisdiction. Violations of a law which provides for penalties are the concern of the duly-elected and appointed officials of the Commonwealth. Obviously, a private citizen has no standing to usurp governmental functions, unless his rights have suffered or are about to suffer special damage. The very interesting case of Sparhawk v. The Union Passenger R. Co., 54 Pa. 401, 422 (1867), held:

"Where the wrong is exclusively of a public nature, 'the offender is answerable nowhere', as was said in Scully v. The Commonwealth, 11 Casey 513, 'beyond the penalty of the law'."

It is the opinion of this court that the question whether insurance policies issued for the protection of the property of the School District of the City of Erie are void pecuniarily concerns the taxpayers of the district, although penal statutes also have been violated in which the public as a whole has an interest.

Closely allied to this point is the question also raised that this court is without jurisdiction over this controversy, as authority for which is cited the case of Klein-Logan Co. v. Duquesne Light Co., 261 Pa. 526. This case involves a question of rates under The Public Service Company Law of July 26, 1913, P. L. 1374.

The court there said at page 529, where it was quoting from the case of Borough of St. Clair v. Tamaqua & Pottsville Electric R. Co., 259 Pa. 462, 468:

". . . and this is so [that the Public Service Commission had exclusive jurisdiction] not because the courts have any desire to avoid the performance of duties cast upon them by the law, but because the people, speaking through the legislature, have declared that these duties shall be performed by a special tribunal created for the purpose."

There has not been cited to this court, nor has this court been able to find, any legislation which takes this controversy from the courts and gives it to an administrative tribunal, as is done in the public utility cases.

Defendants also contend that if this court were to pass upon this general question the discretion of the school district would be invaded by the court. There is no question that the courts are and should be reluctant to intervene in school district questions.

"Executive officers of municipal and school districts have many discretionary powers in performing their functions; ordinarily courts will not interfere with this exercise, but if it appears their action is based on a misconception of law, ignorance through lack of inquiry into facts necessary to form intelligent judgment, or the result of arbitrary will or caprice, courts will intervene to prevent an abuse of power adverse to public welfare": Hibbs et al. v. Arensberg et al., 276 Pa. 24, 26 (1923).

"In this matter was involved, solely, the exercise of discretion by the school board in the performance of an official duty, for which they alone are responsible; this discretion, *when it does not transgress the law*, is not reviewable by this or any other court": Hysong et al. v. Gallitzin Borough School District et al., 164 Pa. 629, 655 (1894). (Italics supplied.)

Under the main problem of the lack of power in the insurance companies' charters, defendants take the position that, although these policies of insurance are ultra vires, the School District of the City of Erie is protected, because the contracts are executed and, they being executed, the courts will not disturb the parties thereunder. The question is, is this school district acting under a "misconception of the law"?

All defendants, that is the defendant school district and defendant insurance companies, take the position that, since the insurance companies have accepted and retained the benefits, on a suit by the school district against one of these insurance companies a defense of ultra vires could not be raised. If this is so, defendants argue that the questioned policies are perfectly valid and afford the school district complete protection. To sustain their position both defendants rely upon the following statement of the law which is a general proposition and is readily admitted.

"As a general rule, if an insurance company has received the benefits and retained the advantages of a contract, it cannot be allowed to escape its obligations by raising the defense of ultra vires, at least if the contract does not contravene any statute or public policy": 8 Couch, Encyclopedia of Insurance Law, sec. 2149.

"But in no case should a corporation, which has received the benefits and retains the advantages of a contract, be allowed to escape its obligations on a plea of ultra vires . . . [cases cited]": 1 Couch, Encyclopedia of Insurance Law, sec. 248. These quotations and citations are taken from the briefs of the insurance companies and the school district, respectively.

Portions of the briefs of defendants are quoted to show definitely that both defendants take the position that the school district in accepting and retaining these policies is under the impression that these questioned policies are valid and protect the property of the school district. Therefore, it becomes necessary to determine

whether or not the school district is operating under any "misconception of the law". To determine this question a comprehensive view of the problem becomes necessary.

One of the most typical statements on the position of these defendants regarding the question of ultra vires shows that the courts of Pennsylvania have taken a very definite stand on the subject:

"The jury found that the company received the full benefit of payments made. This is an important fact. The books are full of cases where it has been held that a corporation will not be permitted to repudiate even unauthorized acts of its officers when the corporation has received and retained the benefit of the transaction. . . . 'A corporation may not avail itself even of ultra vires as a defense where a contract has been entered into and executed in good faith by the other party and the corporation has received the benefit of the performance': Presbyterian Board v. Gilbee, 212 Pa. 310, 314, 61 A. 925": Wood Co. v. McCutcheon et al., 136 Pa. Superior Ct. 446, 453 (1939).

This case law has been made positive law so far as business corporations generally are concerned: Business Corporation Law of May 5, 1933, P. L. 364, sec. 303, 15 PS §2852-303.

We are not in the field of regular corporation law, but we are considering a problem in the field of insurance law. There is no question but that the insurance business is affected with a public interest, and, therefore, subject to regulation.

"It [the insurance business] is a business affected with vital public concern, and the state has full power to protect its citizens from the conduct of the business . . .": Long v. Sakleson et al., 328 Pa. 261, 270 (1937).

"Let us consider next the nature of the business. It is not like the sale of commodities for a present equiva-

lent in value, but it is the purchase of indemnity against the risk of loss by fire that may happen at any time, and may not happen at all . . .

"In view of the magnitude and the nature of the insurance business, it is apparent that the public is largely interested in all that relates to it": Commonwealth v. Vrooman, 164 Pa. 306, 318 (1894).

"Under the police power, the conduct of insurance business has been subjected to regulation by the state: Act of 1921 [May 17, 1921, P. L. 789] . . .": Commonwealth ex rel. v. Fidelity Land Value Assurance Co., 312 Pa. 425, 428 (1933).

There are several provisions of the statutory insurance law which provide for penalties should the insurance company violate its provisions. In fact, there is a section that provides for penalties against an insurance company that exceeds its charter powers. See The Insurance Department Act of May 17, 1921, P. L. 789, art. II, sec. 209A, added by the Act of June 4, 1937, P. L. 1640, 40 PS §47(a). If the violations become sufficiently serious an action may be taken against the company to forfeit its right to do business. See Act of May 17, 1921, P. L. 789, as amended by the Act of June 22, 1931, P. L. 616, sec. 1; Act of July 12, 1935, P. L. 958, sec. 1, 40 PS §202.

Counsel for petitioner takes the position that, since the ultra vires acts of these insurance companies do concededly violate the penal provisions of the insurance laws of Pennsylvania, the contracts are therefore unlawful and unenforcible. Counsel for the insurance companies takes the position that, although the policies may violate the penal law, they are not for that reason absolutely void, so far as any suit brought by the school district against the companies in case of loss. Counsel for the insurance companies relies upon the case of South Hills Trust Co. v. Baker et al., 83 Pa. Superior Ct. 243 (1924), as holding that a contract may violate a

law from a penal standpoint and still be enforcible legally between the parties (p. 247) :

"Numerous provisions are made with respect to bills or memorandums of sale or agreements to sell, *but nowhere either in the title of the act or in the enacting sections is it declared that an assignment of stock or an agreement to assign shall be void if not stamped as directed, and it may be inferred from the terms of the statute that the contrary was intended.*" (Italics supplied by insurance companies.)

Obviously, counsel for the insurance companies is relying upon the contention that there is no actual prohibition in the insurance laws against the writing of ultra vires insurance, although penalties have been included.

Counsel's position, therefore, is that the policies taken out by the school district through defendant companies, although ultra vires and in violation of the law, are good and enforcible contracts as between the school district and the insurance companies.

Throughout the hearing, this court again and again asked counsel whether or not there was any express prohibition in the insurance statutes against the writing of ultra vires insurance. This court was informed that there were provisions for penalties. The position of counsel for petitioner was that, since the policies violated the law, the contracts were void. The case of South Hills Trust Co. v. Baker et al., 83 Pa. Superior Ct. 243 (1924), was the answer to this position by counsel for the insurance companies.

This problem, as a matter of fact, had been before the legislature and the court for a great many years. The legislature on February 4, 1870, P. L. 14, began to prohibit the writing of insurance beyond the powers of the charter. At this time fire and lightning insurance were the main insurance policies being considered. This act prohibited the writing of fire and light-

ning insurance ultra vires of the corporate powers. The title of the act shows its purpose: "An act to prevent the issue of unauthorized policies of insurance." This act was attacked as unconstitutional in the case of Commonwealth v. Vrooman, 164 Pa. 306 (1894), but the court held that the insurance business was affected with a public interest and the regulation was legal.

In the case of Arrott v. Walker, 118 Pa. 249 (1888), Nathan U. Walker sued James W. Arrott, in assumpsit, alleging that defendant had agreed to place insurance on plaintiff's business as of 12 o'clock noon on September 1, 1884. On September 12, 1884, there was a serious fire in the building of plaintiff. Defendant had failed to place all the insurance, as he had contracted to do. A verdict resulted in favor of plaintiff on which judgment was entered, from which defendant appealed. Defendant relied upon the provisions of the Act of February 4, 1870, P. L. 14, which prohibited the writing of insurance without specific authority in a charter.

"Accordingly, in his fourth point the defendant's counsel requested the court to instruct the jury that the alleged contract, if made, was void and afforded no basis for a recovery. The court refused the instruction, saying: 'I refuse that point. I refuse to instruct you that it was a contract of insurance and therefore void' ": Arrott v. Walker, 118 Pa. 249, 257 (1888).

The higher court reversed, saying at page 258: "These points should have been affirmed. . . . How it is possible to state a case more squarely within the prohibition of the act of Feb. 4, 1870, P. L. 14, it is not easy to see."

The court made this further significant statement at page 259: ". . . person whose incompetency to make it both parties were bound to know, and that under the provisions of the act of Feb. 4, 1870, P. L. 14, it is absolutely void".

The case of Weed & Co. v. Cuming, 8 Dist. R. 320 (1899), 12 Pa. Superior Ct. 412 (1900), and 198 Pa. 442 (1901), had the very question whether or not insurance written ultra vires of the charter was or was not void. The question could not be more directly before the court. The case was fought through from the court of common pleas and the Superior Court to the Supreme Court. On September 29, 1894, in consideration of the payment and receipt of a premium, plaintiffs were insured agianst loss by fire. On July 22, 1895, the premises covered by the policy were destroyed by fire. The defense was made "that the defendant acted without authority and contrary to law, that the policy is void, and therefore there can be no recovery on it": 8 Dist. R. 320. The lower court would not permit such a defense.

"The defendant had received the premium or consideration for the insurance and a loss having occurred, the contract is executed and the liability of the defendant has become fixed": 8 Dist. R. 320, 323.

If the general doctrine of ultra vires and estoppel were applicable, this position would have been sustained. However, the Superior Court reversed the lower court in these words:

"Our difference is that we cannot agree that the fact that defendant received and retained the premium took this case out from under the operation of the rule, as the court below thought it did": 12 Pa. Superior Ct. 412, 418.

"It is plain that the plaintiff in this present suit must prove that the defendant's promise to pay the loss, found nowhere but in the void policy, has been made and broken. He can only prove that it was made by putting in evidence the policy, but when he shows its existence he also shows that it is void": 12 Pa. Superior Ct. 412, 419.

The position of the Superior Court was upheld by the Supreme Court. The Superior Court cited the case of

Fowler et al. v. Scully, 72 Pa. 456, which gives the reason for permitting defendant to put in such a defense when he has the consideration (p. 468) :

"The defendant may, therefore, defend against it, not because of his own merit, but because the law will not suffer itself to be prostituted."

In other words where insurance is written against a specific prohibition, the courts say that both parties must be charged with knowledge of the law, and the contract is absolutely void.

With such a legislative and judicial background the legislature passed The Insurance Companies Law of May 17, 1921, P. L. 682, art. I, sec. 107, 40 PS §367, which carried forward a legislative intent that such insurance is "prohibited". This act also provides for a penalty. There is the additional feature that the consideration paid for the illegal insurance may be recovered "by an action at law".

This question has been passed upon by the higher courts since the passage of the Act of 1921. In Bedell v. Oliver H. Bair Company, Inc., 104 Pa. Superior Ct. 146 (1931), plaintiff had made payments to defendant corporation for 28 years on a certain contract of insurance. Then plaintiff made a demand for a return of the premiums, and a suit in assumpsit followed. A rule for judgment in favor of plaintiff on the pleadings was made absolute, and was sustained on appeal. Judge Cunningham said in Bedell v. Oliver H. Bair Company, Inc., 104 Pa. Superior Ct. 146, 153:

"Contracts ultra vires of the corporation making them are not merely voidable 'but wholly void and of no effect' and no performance by either party can give the unlawful contract any validity."

Obviously, he could not have been referring to corporations generally, inasmuch as the general law on the subject in Pennsylvania was so well established. The contract he had before him was one of insurance.

There was a similar case filed against the same company, which is found in Lukens, Admx., v. The Oliver H. Bair Co., 104 Pa. Superior Ct. 280 (1932). There were two phases of the question involved. As to the first question the court held (p. 283):

"For the reasons set forth at length in the opinion in that case we affirmed a judgment, on the pleadings, in favor of the plaintiff therein for the aggregate of the payments made by him, with interest from the date of his demand for their return . . .

"Here we have the same insurance feature that was present in the Bedell case . . ."

The second question was held to concern a contract not violative of the prohibition in the first.

A similar question was present in the case of Ruto v. Italian Burial Casket Co., 104 Pa. Superior Ct. 288 (1931). The Bair Company cases cited, supra, were referred to and again upheld in principle. The court said of the Bedell case at page 289:

"We held that the 'Benefit Bond' involved in the Bedell case was unlawful and void because it was an ultra vires contract of insurance issued in violation of our insurance laws."

The court concluded at page 292:

"We think the contracts now in suit were contracts of insurance and were unlawfully issued."

There can be no question but that the violation of the insurance laws referred to was the granting of insurance beyond the charter powers.

"Appellant has cited the following cases as substantiating her contention that the annuity policy was void: Bedell v. Oliver H. Bair Co., 104 Pa. Superior Ct. 146, 158 A. 651; Lukens v. Oliver H. Bair Co., 104 Pa. Superior Ct. 280, 158 A. 654; Ruto v. Italian Burial Casket Co., 104 Pa. Superior Ct. 288, 158 A. 657. These cases are clearly irrelevant. They involved the issuance of contracts of insurance by a company in excess of the scope of its charter powers": Rogers, Admx.,

v. Penn Mutual Life Insurance Company of Phila., 149 Pa. Superior Ct. 63, 71 (1942).

In the case of Lifter et al. v. Ruth Gordon Building & Loan Assn., 19 D. & C. 160 (1933), Judge Kun gave an extended review of the subject of ultra vires in Pennsylvania. He cited the Bedell case, saying at page 170:

"Recovery was allowed [of premiums], but an examination of the record, paper books and opinions of the court below discloses that there was no implied adoption by our appellate court of the United States rule [of *ultra vires* which holds such contracts void]. On the contrary, the basis for the decision was The Insurance Company Law of May 17, 1921, P. L. 682, art. I, sec. 107, 40 PS §367, which prohibits the doing of insurance business in this Commonwealth except as expressly provided, and further provides that premiums paid to any agent for so-called insurance may be recovered by an action at law."

A review of the legislative and case history of the subject of ultra vires insurance convinces this court that the position of the School District of the City of Erie and the insurance companies to the effect that, although the policies may be ultra vires, the school district is still protected by enforcible policies of insurance, is untenable.

If the position of this court is sound, then the school district is accepting and retaining the policies of insurance under a "misconception of the law". Where they believe there is a valid contract, and actually there is a void contract, such action by a school district, while it is admitted to be in the best of good faith, nevertheless is beyond the law, and there is an abuse of discretion.

Then counsel for defendants argues that the school district paid nothing for these policies. How does this position harmonize with the other position of defendants that where benefits and moneys have been ac-

cepted and retained by defendant corporation it cannot then raise the defense of ultra vires? The courts say it would be unjust to permit a general corporation to retain the consideration and at the same time refuse to carry out its promises. But there we have defendants admitting that there was no consideration given for the policies. If then the corporation received no consideration for the policy, how do defendants justify invoking the rule of an unfair retention of consideration under an ultra vires contract? It does not seem reasonable to this court that, where no consideration was given for the policy, in accordance with the contention of the insurance companies, this same company should invoke the rule that retention of benefit or consideration prohibits a defense of ultra vires. The courts say that the receipt of a benefit is important in the prevention of a corporation from raising the question of ultra vires. The court in Wood Co. v. McCutcheon et al., 136 Pa. Superior Ct. 446, 453, said:

"The jury found that the company received the full benefit of payments made. This is an important fact."

Therefore, even aside from the positive prohibition against such insurance, and the cases thereunder, the school district, on a suit against one of these defendant insurance companies, could be met with this argument that the insurance company received nothing so it could equitably defend itself on a basis of lack of power in its charter.

A separate feature of the case remains to be considered. Counsel for petitioner contends that the policy of the school district with the United Mutual Fire Insurance Company is an assessable policy and therefore prohibited. There is no question but that a school district may not enter into an assessable contract of insurance. This particular company issued the policy under the laws of the Commonwealth of Massachusetts. The recent history of the company's negotiations with

the Commonwealth of Massachusetts shows some misunderstanding and some confusion which were straightened out so that the company's charter was amended to permit it to write nonassessable insurance. Prior to April 29, 1943, this company did not have the right to issue nonassessable policies, but on that date the negotiations were completed and on that date the charter was amended to give the company the desired right. Even assuming that this amendment did not relate back to the date of issuance of the policy here under question, there is another point which stamps this policy as nonassessable. The policy does not contain any assessment clause. The bylaws of the company provide (article XIII, sec. 1) :

"Assessable and nonassessable policies. The company shall issue either assessable policies or nonassessable policies or both types of policies as the board may determine. No member shall be assessed under a policy which does not by its terms provide for liability to assessment".

### Conclusions of law

1. Insurance companies are engaged in business affected with a public interest.

2. Items of insurance written ultra vires of the charters of the companies are absolutely void and of no effect.

3. The acceptance of void insurance by a school district is legally an abuse of discretion.

4. The School District of Erie should be restrained from accepting and retaining policies of insurance that are void in whole or in part.

5. The School District of the City of Erie shall pay the costs of this proceeding.

### Decree

And now, to wit, November 18, 1943, the Prothonotary of Erie County is directed to enter a decree nisi

and to give notice to the parties, or their counsel of record, the same to become absolute unless exceptions are filed thereto sec. reg.