## Korn v. Avis Rent-a-Car System, Inc. (No. 1)

*Herbert B. Newberg, Alan Kahn* and *Stanley A. Uhr,* for plaintiffs.

*Harvey Bartle, III, Dennis R. Suplee, G. David Rosenblum, E. Barclay Cole, Jr.,* and *Seymour I. Toll,* for defendants.

KALISH, *J.,* February 10, 1977—

## HISTORY

Presently before the court is defendants' joint motion for judgment on the pleadings in this class action challenging the validity of a certain contractual provision offered by all of defendant carleasing companies in their standard car rental agreements. In all of defendants' contracts, it is provided that a lessee will only be responsible for the first $100 of collision damage to a rental vehicle. However, a lessee is then given the option of paying an additional $2 a day fee to avoid assuming this liability. This provision is referred to as the collision damage waiver provision (hereinafter CDW provision) and is the focus of plaintiffs' attack. Specifically, plaintiffs first charge that the offering of the CDW provision by defendants constitutes the unauthorized selling of insurance in violation of the Commonwealth's insurance laws. Pursuant to this theory, plaintiffs seek an injunction prohibiting the practice and an order requiring defendants to return all moneys received thereunder. Secondly, plaintiffs argue that the $2 charge is grossly excessive and unconscionable and again request that the court, for this reason, enjoin the continuation of the practice and order the return of the difference between the allegedly excessive price and an amount the court determines to have been a reasonable sum for the CDW provision.

## DISCUSSION

### A. Propriety of Judgment on the Pleadings

Preliminarily, plaintiffs suggest that as the record in this action now stands, consideration of a

motion for judgment on the pleadings is an inappropriate exercise for this court. Pa.R.C.P. 1034 states in pertinent part: "After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034. Notwithstanding this language, plaintiffs argue that because requests for admissions with responses have been filed with the court, the only correct procedure at this point is a motion for summary judgment under Pa.R.C.P. 1035. This rule states in pertinent part: "After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits, if any." Pa.R.C.P. 1035.

This court cannot agree with plaintiffs' interpretation of the above two rules. Though it is true that on a motion for judgment on the pleadings a court may not look beyond those documents: Nederostek v. Endicott-Johnson Shoe Co., 415 Pa. 136, 202 A. 2d 72 (1964); it is simply not the case that once additional information is filed with the court, judgment on the pleadings is precluded. Under Pa.R.C.P. 1035 a party *may* move for summary judgment. However, it is not mandatory. The court can, by limiting its examination to only the pleadings, properly rule on the instant motion notwithstanding the presence of additional information.

Plaintiffs also seek to demonstrate the inappropriateness of defendants' motion by claiming that there are material issues of fact raised which prevent this preliminary examination of the merits of the case. Nonetheless, on careful examination of plaintiffs' allegations, it appears that these so-called "factual disputes," as to the insurance issue,

are the central legal issues on which their cause of action is based. For the sake of this motion, defendants do not dispute plaintiffs' description of how they offer the CDW provision or the price charged therefor. Rather, what is disputed is whether the CDW provision can be properly considered insurance. Whether this court may properly undo a contract based on unconscionability stands on a different footing, for which an evidentiary hearing is required.

B. CDW Provision as Insurance in Pennsylvania

Plaintiffs charge that defendants, by offering the CDW provision, are engaged in the unregistered business of selling insurance in contravention of the laws of this Commonwealth. They seek injunctive relief under the Act of June 12, 1931, P.L. 574, 40 P.S. §480 (1971), which provides:

"It is unlawful for any person, corporation, company or association to do business, within this Commonwealth, as an individual or as a corporation, or protective or cooperative company or association, incorporated, organized or formed for the purpose of soliciting and for accepting premiums or dues and selling to purchasers policies or contracts guaranteeing to owners of automobiles, motorcycles or trucks the services of attorneys in event of damage to persons or property arising out of the operation of automobiles, motorcycles or trucks, or providing for the towing of any damaged automobile, motorcycle or truck, or to hold himself or itself out or to represent himself or itself to the public as being engaged in insurance business or as being an insurance company, insurance association, person, company or association authorized to engage in any kind of insurance business, or to do

the kind of business usually transacted by insurance companies, insurance associations and insurance exchanges, although transacted under some other name or description unless such person, company or association is legally incorporated or organized and doing business under the laws of this Commonwealth as an insurance company, insurance association or insurance exchange, and is duly registered and licensed to do business by the Insurance Department."

In addition, they seek on their own behalf and on behalf of the class of persons similarly situated all moneys paid for the CDW provision pursuant to the Act of May 17, 1921, P.L. 682, art. 1, 40 P.S. §367, which provides in pertinent part:

"Except as herein provided, the doing of any insurance business in this Commonwealth, as prescribed in this act, for insurance companies, by any private individual, association, or partnership, is prohibited . . . Any person who has paid to any agent of such unauthorized individual, association, or partnership any premium moneys for insurance granted or to be granted shall be entitled to recover the same by an action at law from such agent or from the person, association, or partnership for which he acted."

Unfortunately, Pennsylvania's insurance laws do not define the word "insurance." As a result, this court must apply the word as it is generally understood in this Commonwealth: Com. ex rel. Schnader v. Fidelity Land Value Assurance Co., 312 Pa. 425, 167 Atl. 300 (1933). The most complete definition was last enunciated by the Pennsylvania Supreme Court in 1933 when it characterized the concept in the following manner:

"'The general object or purpose of an insurance company is to afford indemnity or security against loss: its engagement is not founded in any philanthropic, benevolent, or charitable principle; it is a purely business adventure, in which one, for a stipulated consideration or premium per cent, engages to make up, wholly or in part, or in a certain agreed amount, any specific loss which another may sustain; and it may apply to loss of property, to personal injury, or to loss of life. To grant indemnity or security against loss, for a consideration, is not only the design and purpose of an insurance company, but is also the dominant and characteristic feature of the contract of insurance.'" Com. v. Beneficial Association, 137 Pa. 413, 419, 18 Atl. 1112 (1890), quoted with approval in Com. ex rel. Schnader v. Fidelity Land Assurance Co., supra.

Plaintiffs submit that the CDW provision is insurance because it constitutes an agreement whereby a given risk is shifted with the cost thereof being spread out over a large group. However, when measured against the above standard, plaintiffs' first theory of recovery cannot be sustained. Although it is true that the CDW provision does involve a shifting of risk of damage to the rented car up to $100 from the members of plaintiffs' putative class to defendants, that factor alone does not indelibly stamp the transaction as insurance: Jordon v. Group Health Association, 107 F. 2d 239, 247-48 (D.C. Cir. 1939). Indeed, if this were the determinitive factor, the concept of "insurance" would be hopelessly distorted: "That an incidental element of risk distribution or assumption may be present should not outweigh all other factors. If attention is

focused only on that feature, the line between insurance or indemnity and other types of legal arrangement and economic function becomes faint, if not extinct." Jordon v. Group Health Association, supra, 107 F. 2d at 247-48.

Surely not even plaintiffs would urge on this court that contracts such as those used in the sale and delivery of goods in which risk of loss may be shifted between seller or buyer during delivery should be considered insurance. Yet, plaintiffs' argument would logically compel such a conclusion. Not everything involving risk shifting is insurance.

"This is especially true when the contract is for the sale of goods or services on contingency. But obviously it was not the purpose of the insurance statutes to regulate all arrangements for assumption or distribution of risk. That view would cause them to engulf practically all contracts. . . . The fallacy is in looking only at the risk element, to the exclusion of all others present or their subordination to it." Jordon v. Group Health Association, supra, 107 F. 2d at 248.

Similarly, the fact that the risk herein involved is possibly spread over a large group is far from critical. Contractual pricing must properly include an evaluation of the risk inherent in any business venture. The number of individual exposures involved is an important consideration. Such an examination is not limited to the insurance industry.

Rather than only considering the question of risk shifting and risk spreading, this court is of the opinion that two other factors are important in analyzing the CDW provisions as possible violations of the Pennsylvania insurance laws. These are the overall principal object and purpose intended in the

transaction as a whole: see Transportation Guarantee Company v. Jellins, 29 Cal. 2d 242, 174 P. 2d 625, 629 (1946), and whether there is truly any element of indemnification herein involved: Com. ex rel. Hensel v. The Provident Bicycle Association, 178 Pa. 636, 638, 36 Atl. 197, 36 L.R.A. 589 (1897); United National Insurance Company v. Philadelphia Gas Company, 221 Pa. Superior Ct. 161, 164, 289 A. 2d 179 (1972). Looking at both of these factors it becomes clear that the CDW provision cannot be considered insurance.

The overall transaction involved in the instant suit is the renting of automobiles. The CDW provision is an intricate part of the rental agreement and is offered merely to relieve the lessee from some potential liability. The arrangement is nothing more than a simple bailment. Because of this, the present situation can be distinguished from the cases plaintiffs cite on this issue. For example, in Com. ex rel. Hensel v. Philadelphia Inquirer, 15 Pa.C.C. 463, 3 Dist. R. 742 (Com. Pl. 1892), it was held that where a newspaper offered to pay $500 to the estate of anyone who died and had in their possession a coupon found in each daily edition making the offer, the paper was engaged in the doing of insurance business. There, it was evident that the primary purpose of the transaction was the payment of funds in the event of death; a purpose entirely separate from the company's ordinary business of selling newspapers. Similarly, in Ruto v. Italian Burial Casket Company, 104 Pa. Superior Ct. 288, 158 Atl. 657 (1932), the court held to be insurance a contract whereby in consideration of certain periodic payments a casket company agreed to provide $200 worth of funeral equipment on death regardless of whether the amount of the

periodic payments received was less than $200. Again, the principal purpose involved was the payment of money on the happening of a certain event.

In contrast to the above cases, the CDW provision is a small integrated part of a much larger contract which is primarily concerned with the renting of an automobile. Indeed, the situation is quite like that described in Fire Certificates, 20 Dist. R. 825, 39 Pa.C.C. 163 (1911). Though this was an opinion of the Attorney General of Pennsylvania rather than a judical body, this court considers its reasoning pertinent and controlling to the CDW provision. In Fire Certificates, a company rented pianos pursuant to a lease which held the lessee responsible for damage to the instrument in the event of fire. However, if the lessee obtained, for an additional consideration, a "fire certificate" from the company, then the lessor would retain responsibility for the loss. In opining that this did not constitute insurance, the Attorney General stated:

"The lessor agrees with the lessee that if the lessor's property be destroyed while in the possession of the lessee, the lessor will restore it, if damaged, or replace it, if destroyed. This is a consideration for the contract of lease, not for a contract of insurance. This is in no sense a contract to insure the property of another; *it is only an agreement that the lessee shall not be responsible for damage by fire to the lessor's property while the property is in the lessee's custody.*" Fire Certificates, supra, 20 Pa. at 826. (Emphasis supplied.)

Similarly, the CDW provision cannot really be considered one of indemnity. Black's Law Dictionary defines indemnify thusly: "[T]o give security

for the reimbursement of a person in case of an anticipated loss falling on him . . . to make reimbursement to one of a loss already incurred by him." Black's Law Dictionary 910 (Rev. 4th Ed. 1968). Webster's defines indemnity as "repayment or reimbursement for loss, damage, etc.; compensation." Webster's New Universal Dictionary— Unabridged 928 (2nd Ed. 1966). The CDW provision does not cause defendant to pay anything to members of plaintiffs' putative class in the event of damage to the rented vehicle. Instead, defendants merely agree not to look to their customers for any reimbursement for such minor damage up to $100 just as they would with any customer for damage in excess of that amount. Plaintiffs' argument that defendants are "indemnifying" plaintiffs for potential money plaintiffs might owe to defendants is just too circular for this court to accept. By offering the CDW provision, defendants cannot be considered to be offering to indemnify plaintiffs for damage to defendants' own property. This would be an overly stretched interpretation and inconsistent with the Act of June 12, 1931, P.L. 574, sec. 1, 40 P.S. §480 (1971) quoted above which speaks of the unlawful offering of insurance *"to owners* of automobiles, motorcycles or trucks." (Emphasis supplied.) The opinion in Fire Certificates, supra, expresses the obvious difficulty with such an approach:

"If the lease itself contained the provision that the lessee should not be responsible for the damage to or destruction of the piano by fire, and that, in the event of such damage or destruction, the lessor would restore or replace the same, such a provision dealing with the lessor's own property could hardly

be considered a contract of insurance of his own property. It is no more of a contract of insurance because the lessor requires the lessee to be responsible unless he has a fire certificate, and the fire certificate is made upon a separate paper, which refers to the lease." Fire Certificates, supra, 20 Dist. R. at 826.

Additionally, the fact that if a third party offered, for consideration, to be responsible for the first $100 of damage it would be selling insurance, does not change the result here. Companies which qualify to be self-insurers rather than secure automobile insurance policies are not considered insurers though third parties providing the policies obviously would be: United National Insurance Company v. Philadelphia Gas Works, supra, 221 Pa. Superior Ct. at 164. Neither are defendants engaged in insurance here.

Such a ruling is not only compelled by the foregoing analysis but is also consistent with the purposes behind the regulatory insurance laws of Pennsylvania. The underlying rationale for their enactment was stated in Com. v. Vrooman, 164 Pa. 306, 318, 30 Atl. 217 (1894):

"The security of policy holders requires, first, permanency in the custodian of the funds gathered from them, and on which their indemnity in case of loss depends; second, an honest and competent administration of these funds; third, restraint against the division of the profits of the business whenever such division would injuriously affect the security of policyholders. How are these safeguards to be obtained? There is but one way in which they can be obtained and that is by means of general laws regulating the insurance business."

The financial stability and management of defendants is obviously irrelevant to plaintiffs and there is no need for the protection described by the Vrooman court. Once the CDW provision is accepted, defendants agree not to seek any reimbursement for damages. This will be binding regardless of their financial condition. Regulation by the Insurance Commissioner would be unjustified and wasteful. Plaintiffs' first two counts of their complaint accordingly cannot be sustained.

## C. Unconscionability

In counts 3 and 4 of their complaint, plaintiffs charge that the $2 received for the CDW provision is an unreasonable amount and therefore unconscionable. They seek both injunctive relief to prevent the charging of more than a reasonable amount and a refund of the excess over such amount already paid for the CDW provision by members of the putative class. Defendants argue that such an affirmative cause of action, based solely on unconscionability, does not exist in Pennsylvania. They point out that historically the charge of unconscionability has been used at common law and under section 2-302 of the Uniform Commercial Code of April 6, 1953, P.L. 3, sec. 2-302, as amended, 12A P.S. §2-302, as an affirmative defense to an assumpsit action for failure to perform a contractual duty: Campbell Soup Company v. Wentz, 172 F. 2d 80, 83 (3d Cir. 1948); American Home Improvement, Inc. v. MacIver, 105 N.H. 435, 201 A. 2d 886, 889 (1964); Rossotti Lithograph Corporation v. Townsend, 50 D. & C. 2d 451, 454, 40 Northamp. 21 (1970). Plaintiffs, on the other hand, contend that this

court, sitting in equity, has the inherent power to fashion the relief they seek particularly in light of recent consumer protection legislation adopted in this Commonwealth.

Plaintiffs have cited the Unfair Trade Practices and Consumer Protection Law of December 17, 1968, P.L. 1224, amended November 24, 1976, P.L. 1166, 73 P.S. §201-1 et seq. (hereinafter Consumer Protection Law) as authority for the maintenance of the last two counts of their complaint. As amended, the Consumer Protection Law explicitly recognizes a private cause of action: Act of November 24, 1976, P.L. 1166, sec. 9.2. The purposes of the statute were described recently by the Pennsylvania Supreme Court in Com. v. Monumental Properties, Inc., 459 Pa. 450, 457-58, 329 A. 2d 812 (1974):

"The Legislature sought by the Consumer Protection Law to benefit the public at large by eradicating, among other things, 'unfair or deceptive' business practices. . . . [T]his Law attempts to place on more equal terms seller and consumer. These remedial statutes are all predicated on a legislative recognition of the unequal bargaining power of opposing forces in the marketplace. Instantly, the Legislature strove, by making certain modest adjustments, to ensure the fairness of market transaction. . . . " Furthermore, since the Consumer Protection Law seeks to prevent fraud, it must be liberally construed: Com. v. Monumental Properties, Inc., supra, 459 Pa. at 459.

This court must decline to enter judgment on the pleadings as to plaintiffs' unconscionability claims. Gross unfairness of price may be considered as an

element within the scope of the term "unconscionability.": American Home Improvement, Inc. v. MacIver, supra, 105 N.H. at 439; Toker v. Westerman, 113 N.J. Super. 452, 455, 274 A. 2d 78 (1970); Jones v. Star Credit Corporation, 298 N.Y.Supp. 2d 264, 266, 59 Misc. 2d 189 (Sup. Ct. Nassau Co. 1969). However, a reading of the cases shows that the exorbitance of price is usually accompanied by some element of fraud: See generally, Note, Unconscionability: Uniform Commercial Code Section 2-302, 36 Albany L. Rev. 114, 122-26 (1971). Further, 2-302 U.C.C. has applicability beyond contracts for sale of goods:

"While Article 2 of the UCC, including Sec. 2-302 dealing with unconscionability, governs only contracts for the sale of goods, from its inception, it was predicted that the rule would be followed, by analogy, in cases involving other types of contracts. . . ." Albert Merrill School v. Godoy, 78 Misc. 2d 647, 357 N.Y.S. 2d 378-380 (Civil Ct. N.Y. Co. 1974). Accord: United States Leasing Corporation v. Franklin Plaza Apartments, 65 Misc. 2d 1083, 319 N.Y.S. 2d 531, 535 (Civil Ct. N.Y. Co. 1971).

Also, section (2) of 2-302 of the U.C.C. provides that when it is claimed that the contract may be unconscionable the *parties* shall be afforded a reasonable opportunity to present evidence *as to its commercial setting, purpose and effect* to aid the court in making the determination.

Unconscionability as grounds for an affirmative equitable action for injunctive relief and contractual rescission has been recognized by courts outside of Pennsylvania: Kugler v. Romain, 58 N.J. 522, 279 A. 2d 640 (1971).

This court is aware of authority to the contrary which confines unconscionability to affirmative defenses only: Pearson v. National Budgeting Systems, Inc., 297 N.Y.Supp. 2d 59, 31 A.D. 2d 792 (App. Div. 1969); Vom Lehn v. Astor Art Galleries, Ltd., 380 N.Y.Supp. 2d 532, 86 Misc. 2d 1 (Sup. Ct. Suffolk Co. 1976). However, in both of these cases, the charge of unconscionability was affirmatively attempted in the context of the Uniform Commercial Code alone rather than along with a state consumer protection statute. Indeed, in Vom Lehn v. Astor Art Galleries, Ltd., supra, after the court refused recovery under the Uniform Commercial Code, it then allowed recovery for the plaintiffs under a consumer protection statute which plaintiffs had ignored in their complaint: Vom Lehn v. Astor Art Galleries, Ltd., supra, 380 N.Y.Supp. 2d at 541-43.

Furthermore, section 2-302(1) provides that where the court finds unconscionability, it may so limit the application of any unconscionable clause as to avoid any unconscionable result. Since this section was intended to carry equity practices into this field (see Pennsylvania Bar Association Notes (1953) to this section) a broad interpretation may include the relief sought by plaintiff.

In the instant case, plaintiffs claim that the CDW provision is virtually illusory since allegedly defendants have repurchase agreements under which cars are disposed of at predetermined prices regardless of condition and defendants never bother prosecuting customers who decline the CDW provision. Because of this, plaintiffs contend that the CDW provision charge is totally unfair. This court cannot, at this point, state that plaintiffs' allegations do not constitute a cause of action.

Thus, at this preliminary stage, it should not preclude plaintiffs from presenting evidence to aid the court in making a determination of unconscionability.

## ORDER

And now, February 10, 1977, upon consideration of defendants' motion for judgment on the pleadings, plaintiffs' answer thereto and oral argument, it is hereby ordered and decreed that:

1. Defendants' motion for judgment on the pleadings as to counts 1 and 2 of plaintiffs' complaint is granted and judgment is entered in favor of defendants;

2. Defendants' motion for judgment on the pleadings as to counts 3 and 4 of plaintiffs' complaint is denied.